UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PARTNER ASSESSMENT CORPORATION,

       Plaintiff,

v.

CLAUDIA ROSEN,

       Defendant.
_____/

Case No. 1:25-cv-12832

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S EX PARTE EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Plaintiff Partner Assessment Corporation seeks a preliminary injunction or, in the alternative, a temporary restraining order to enjoin Defendant, Claudia Rosen, from continuing to work for AEI consultants in violation of the noncompete agreement that she signed with Plaintiff. But because Plaintiff has not satisfied the procedural requirements for the requested injunctive relief, the Motion will be denied without prejudice.

**I.**

**A.**

Plaintiff Partner Assessment Corporation is a global, multidisciplinary consulting firm specializing in environmental and engineering services. ECF No. 5 at PageID.47. Among other things, Plaintiff's business offerings include building assessments, construction risk management, energy and sustainability consulting, and environmental health and safety. *Id.*

Plaintiff contends that the environmental and engineering consultancy industry is highly competitive, so it has heavily invested in building relationships with clients to maintain a

competitive advantage in the marketplace. *Id.* In so doing, Plaintiff has maintained and developed trade secrets and other proprietary information, including the following:

> (A) the identities of Partner's business partners, referral sources, clients, and prospective clients; (B) the contacts at such business partners, referral sources, clients, and prospective clients who have authority to secure consulting services provided by Partner; (C) unique (i.e., client-specific and/or project-specific) scientific and business reports, proposals, plans, analyses, contracts, sub-agreements, invoices, and deliverables; (D) unique client profiles, including needs, requirements, preferences, businesses, habits, ongoing projects, and pricing agreements; and (E) financial and organizational information relating to the services offered and sold by Partner to its clients, including reports concerning financial data, performance, and profitability, business strategies, and growth strategies.

ECF No.5 at PageID.48. Because this proprietary information is valuable, Plaintiff requires employees to sign nondisclosure and post-employment noncompete agreements. *Id.* at PageID.48–49.

**B.**

In 2016, Plaintiff extended a revised offer of employment to then-employee, Defendant Claudia Rosen. ECF No. 5 at PageID.49. Plaintiff conditioned Defendant's revised offer on her executing an agreement that included noncompete, confidentiality, and nonsolicitation provisions. ECF No. 5-3 at PageID.85–86. The noncompete provision provided the following language:

> Employee agrees that for a period of 12 months following termination of employment from the Company, Employee will not render to or for any Client any services of the type rendered by the Company or act as an employee, consultant, partner, or shareholder of any business that is engaged in the business of the same nature or competitive with that conducted by the Company on the date of termination of employment.

ECF No. 5-3 at PageID.86. Additionally, the confidentiality provision provided the following language:

> The Employee shall hold in confidence for the benefit of the Company all secret or confidential information, knowledge or data, Client information, supplier information, cost and pricing information, marketing and sales techniques, strategies and programs, research and development, unannounced product specifications and prototypes, computer programs and software and financial information relating to the Company or any of its affiliated

companies and their respective businesses that the Employee obtains during the Employee's employment by the Company or any of its affiliated companies and that is not public knowledge.

*Id.* at PageID.85. Defendant executed the agreement on May 4, 2016. ECF No. 5 at PageID.49.

After that, Defendant received multiple promotions. To that end, in July 2021, Defendant was promoted to Principal and Technical Director. *Id.* Through this role, Defendant became a shareholder of Plaintiff, giving her greater access to Plaintiff's trade secrets and other confidential and proprietary information. *Id.* at PageID.50. And in July of 2023, Defendant was again promoted, this time to Principal and National Managing Director, making her the "APEX" leader of Plaintiff's Environmental Solutions Practice group. *Id.* Defendant's new role was client-facing—that is, Defendant communicated, consulted, and worked directly with Plaintiff's business partners, referral sources, and clients. *Id.* Sometimes, Defendant served as the primary or only point of contact for many of Plaintiff's clients. *Id.* Because of Defendant's senior position in management, she gained access to far more confidential and proprietary information, including information in Plaintiff's Client Relationship Management System. *Id.* at PageID.52. This system included proprietary and confidential information regarding almost every aspect of Plaintiff's ongoing and prospective projects, including client information about profit margins, contact information, and budgets. *Id.*

## C.

On June 30, 2025, Defendant provided a verbal notice of her resignation to her supervisor. *Id.* In response, at some point, Plaintiff issued an independent forensic analysis of Defendant's company-issued computer. *Id.* at PageID.54. This analysis revealed that shortly before Defendant resigned from Plaintiff, she accepted an offer of employment from AEI consultants—Plaintiff's competitor. *Id.*

Between July 7 and July 11, 2025, Defendant allegedly used her computer to access, copy, and retain sensitive and confidential information, and continued to access these materials after her employment ended. *Id.* According to Plaintiff, Defendant retained access to these documents through a Dropbox account where she uploaded upwards of 5,000 sensitive and proprietary files in four separate sub-folders. *Id.* at PageID.54–55. Moreover, Defendant allegedly had no legitimate need to access these files after her resignation. *Id.* at PageID.56. Plaintiff also alleges that Defendant used her company-issued computer in December of 2024 to create a "business plan" on behalf of another competitor that Defendant ultimately never joined. *Id.* Defendant allegedly wrote several statements regarding taking staff and project work to the competitor had she chosen to leave Plaintiff. *Id.* And on July 10, 2025, Defendant allegedly created a document titled "Clients to call.dox," listing eight of Plaintiff's clients. *Id.* The next day, Defendant allegedly accessed an email from AEI titled "FW: New Hire Announcement - Suzi Rosen, Site Mitigation" in her personal Gmail. *Id.*

AEI has since formally announced that Defendant joined its ranks. *Id.* at PageID.58. Defendant's role at AEI is in the same capacity as it was with Plaintiff. *Id.* And Plaintiff alleges that at least one critical referral source has already indicated that it is considering "following" Defendant to her new company and terminating its relationship with Plaintiff. *Id.*

**D.**

On August 1, 2025, Plaintiff sued Defendant, alleging that Plaintiff breached their noncompete agreement and violated the Federal Defend Trade Secrets Act. ECF No. 1. On August 11, 2025, Plaintiff moved for an ex parte preliminary injunction, or a temporary restraining order (TRO) that enjoins Defendant from working for AEI Consulting. ECF. No. 5.

## II.

A Court may issue a temporary restraining order without notice to the adverse party only if the movant sets forth "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and if "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b)(1).

If the movant clears those procedural hurdles, then courts move to the merits. In determining whether to grant a TRO, a court must weigh four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunctive relief." *A & W X-Press, Inc. v. FCA US*, LLC, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The TRO standard is "logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016).

## III.

Up front, this Court must consider whether Plaintiff's Motion complies with Civil Rule 65's procedural requirements. It does not. For starters, preliminary injunctions may not issue without notice to the enjoined party. *See* FED. R. CIV. P. 65. So Plaintiff's request for a preliminary injunction is premature.

Plaintiff also misses the procedural mark for its request for a TRO. True, Plaintiff submitted specific facts outlined in a verified complaint, *see* ECF No. 1, satisfying Civil Rule 65(b)(1)(A).

But Plaintiff has not complied with Civil Rule 65(b)(1)(B)'s notice requirements. For TROs, reasonable notice requires the moving party to provide information within a reasonable time to allow opposing parties an opportunity to be heard. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). In *Total Quality Logistics, LLC v. Riffe*, the court held that an email one business day before the issuance of an *ex parte* TRO does not constitute reasonable notice. 2019 WL 340683, at *2 (S.D. Ohio Jan. 28, 2019). Here, Plaintiff's lack of notice is more problematic than in *Total Quality Logistics*. Indeed, the only notice to Defendant that Plaintiff's papers reveal is an email to Defendant the same day it filed its Motion. ECF No. 5 at PageID.43.

Without proper notice, Plaintiff must demonstrate reasons why providing reasonable notice should not be required. FED. R. CIV. P. 65(b)(1)(B). But not only has Plaintiff not offered any means of reasonable notice, it has neither offered a reason why notice should not be required. Moreover, the Sixth Circuit has identified two reasons why *ex parte* relief may be granted: (1) where notice to an adverse party is impossible, as in the cases where the adverse party is unknown or is unable to be found, or (2) because notice would render further action fruitless. *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). Yet Plaintiff has not argued that either reason is present here. This is a fatal flaw that dooms Plaintiff's Motion. *See Davis v. Colerain Twp.*, No. 1:24-CV-56, 2024 WL 488211, at *1 (S.D. Ohio Feb. 8, 2024) (holding that ex parte relief is not appropriate because Plaintiff failed to provide a reason why reasonable notice should not be required).

In sum, Plaintiff has not satisfied Civil Rule 65's procedural requirements for preliminary injunctions and TROs. Thus, Plaintiff's Motion for Plaintiff's Motion for a Preliminary Injunction or Temporary Restraining Order, ECF No. 5, will be denied.

## IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion for a Preliminary Injunction or Temporary Restraining Order, ECF No. 5, is **DENIED WITHOUT PREJUDICE.**

**This is not a final order and does not close this case.**

Dated: August 13, 2025              s/Thomas L. Ludington
                                    THOMAS L. LUDINGTON
                                    United States District Judge