UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PARTNER ASSESSMENT CORP.,

    Plaintiffs,

v.

CLAUDIA ROSEN

    Defendant.

_____/

Case No. 1:25-cv-12382

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT ROSEN'S MOTION TO TRANSFER VENUE AND MOTION TO STAY ANSWER DEADLINE AND LIMIT DISCOVERY**

On August 1, 2025, Plaintiff Partner Assessment Corporation sued Defendant Claudia Rosen, alleging that Defendant breached her noncompete agreement and violated both the Federal Defend Trade Secrets Act (DTSA) and the Michigan Uniform Trade Secrets Act (MUTSA). ECF No. 1. Defendant had previously worked as a high-ranking member of Plaintiff's environmental consultancy business in California but has recently joined a rival consultant firm (AEI Consultants), also located in California, in breach of her noncompete agreement. Before leaving, Defendant is alleged to have downloaded several thousand pages of Plaintiff's trade secrets.

On August 11, 2025, Plaintiff moved for an *ex parte* preliminary injunction, or a temporary restraining order (TRO) that enjoins Defendant from working for AEI. This Court rejected that Motion on procedural grounds for inadequate notice. On August 14, 2025, Plaintiff renewed its Motion for an *ex parte* preliminary injunction or TRO and provided different notice to Defendant via FedEx and hand deliveries. This Court granted Plaintiff's Motion for a TRO on August 20, 2025. In so doing, this Court held that, while Plaintiff's non-compete agreement was overbroad both geographically and in scope, Plaintiff was nonetheless entitled to a TRO on its DTSA and

MUTSA claims. On August 21, 2025, Defendant filed an unaddressed Motion to Either Dissolve or Modify the TRO.

However, on September 4, 2025, the Defendant filed motions to transfer venue and to stay the answer deadline, as well as to limit discovery pending resolution of the motion to transfer venue. Defendant argues that both Plaintiff and AEI are corporations located in California, all witnesses are in California, and that the alleged material facts leading to the cause of action all occurred in California, so the case should be transferred to the Central District of California. This Court disagrees that transferring venue is warranted. And because the Court will deny Defendant's Motion to Transfer Venue, her Motion to stay the answer deadline will also be denied as moot.

I.

A. The Parties and their Agreement

Plaintiff is a global, multidisciplinary consulting firm based in California. ECF No. 9 at PageID.134. Among other things, Plaintiff's business offerings include building assessments, construction risk management, energy and sustainability consulting, and environmental health and safety. *Id.* Plaintiff contends that the environmental and engineering consultancy industry is highly competitive, so it has heavily invested in building relationships with clients to maintain a competitive advantage in the marketplace. *Id.* As a result, Plaintiff has maintained and developed trade secrets and other proprietary information. *Id.* at PageID.135. Because this proprietary information is valuable, Plaintiff requires employees to sign nondisclosure and post-employment noncompete agreements as a condition of employment. *Id.* at PageID.135-36. Further, Plaintiff limits access to trade secrets on a need-to-know basis. *Id.* at PageID.136.

In March 2016, Plaintiff offered Defendant Claudia Rosen—a highly experienced environmental consultant—a position as Technical Director of its Site Mitigation Group located in Santa Ana, California. *Id.* at PageID.243, 245. Defendant accepted this position, signing her

original offer letter on April 15, 2016. *Id.* But shortly after joining Plaintiff's ranks, Defendant had a personal crisis that forced her to temporarily relocate to Michigan. *Id.* Seemingly because of her move, Plaintiff extended a revised offer to Defendant. ECF No. 9 at PageID.136. This new agreement contained *both* a global noncompete provision and a Michigan choice-of-laws clause. ECF. No. 15-2 at PageID.329–30. It also contained a clause fully integrating the new agreement and superseding the old agreement:

> *The Agreement supersedes all previous oral or written communications, representations, understandings or agreements by or with the Company regarding the subject matters herein.* Nothing in this Agreement alters the Employee's status as an at-will employee of the Company.

*Id.* at PageID.330 (emphasis added).

Defendant signed this new agreement on May 4, 2016. *Id.* Notably, Plaintiff's initial email that offered Defendant a position indicated that her start date was May 9, 2016. ECF No. 15-1 at PageID.303. Thus, her first workday would still have been after she signed the new agreement, implying that she never worked in California for Plaintiff, but instead only worked remotely from Michigan.

**B. Defendant's Work for Plaintiff**

Although Defendant worked for Plaintiff remotely from Michigan, Defendant frequently traveled to California for work and contends that her work during this period remained solely focused on California. *Id.* During that time, Defendant received multiple promotions. ECF No. 9 at PageID.136–137. In July 2021, Defendant was promoted to Principal and Technical Director. ECF No. 1 at PageID.7. Through this role, Defendant became a shareholder of Plaintiff, giving her greater access to Plaintiff's trade secrets and other confidential and proprietary information. ECF No. 9 at PageID.137. And in July 2023, Defendant was again promoted, this time to Principal and National Managing Director, making her the "APEX" leader of Plaintiff's Environmental

Solutions Practice group. *Id.* Defendant's new role was client-facing—that is, Defendant communicated, consulted, and worked directly with Plaintiff's business partners, referral sources, and clients. *Id.* Sometimes, Defendant served as the primary or only point of contact for many of Plaintiff's clients. *Id.* While Defendant acknowledges that this was a "national practice," she contends that she only "provided technical support as needed" and that most of her client-facing work remained in California. ECF No. 15, PageID.247–48.

On June 30, 2025, Defendant provided verbal notice to her supervisor that she would be leaving the company. ECF No.9 at PageID.141.

### C. Defendant's Alleged Breach

An independent forensic analysis of Defendant's work computer indicated that she accepted her new position with AEI on March 14, 2025, approximately three months before providing verbal notice of her resignation to Plaintiff on June 30. ECF No.9 at PageID.141. And Plaintiff alleges that between July 7 and July 11, 2025, Defendant used her computer to access, copy, and retain sensitive and confidential information, and continued to access these materials after her employment ended. *Id.* According to Plaintiff, Defendant retained access to these documents through a Dropbox account where she uploaded upwards of 5,000 sensitive and proprietary files in four separate subfolders. *Id.* at PageID.141–42. One folder entitled "Documents" allegedly included 4,857 files relating to client proposals, marketing documents, project and costing documentation, and business plans. *Id.* at PageID.142. Another subfolder, entitled "Proposal Resources," allegedly contained over 600 files related to Plaintiff's strategic pricing information, formulas, and proposal costing templates. *Id.* A "Docs" subfolder allegedly contained highly sensitive documents, some of which were so sensitive that they were password-protected. *Id.* Defendant allegedly had no legitimate need to access these files after her resignation. *Id.* at PageID.143.

Plaintiff also alleges that Defendant used her company-issued computer in December of 2024 to create a "business plan" for another competitor that Defendant ultimately never joined. *Id.* In that document, Defendant allegedly referred to her intention or plan regarding taking staff and project work to the competitor. *Id.* And on July 10, 2025, Defendant allegedly created a document titled "Clients to call.dox," listing eight of Plaintiff's clients. *Id.* The next day, Defendant allegedly accessed an email from AEI titled "FW: New Hire Announcement - Suzi Rosen, Site Mitigation" in her personal Gmail. *Id.* Afterward, Defendant allegedly accessed a series of Plaintiff's high-level management and financial reports and took screenshots of these reports—saving them to Dropbox. *Id.* at PageID.143. Plaintiff asserts that Defendant has continued to access the Dropbox folders she created, although to an unknown extent. *Id.* But Plaintiff states that Defendant accessed her Dropbox at least once on July 14, 2025, three days after her last day working for Plaintiff. *Id.*

AEI has since formally announced that Defendant joined its ranks. *Id.* at PageID.145. Defendant's role at AEI is in the same capacity as it was with Plaintiff. *Id.* And Plaintiff alleges that at least one critical referral source has already indicated that it is considering "following" Defendant to her new company and terminating its relationship with Plaintiff. *Id.*

## II.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or *division* where it might have been brought." *Id.* (emphasis added). The party requesting transfer bears the "substantial" burden of proving it is warranted. *Finley v. Kelly*, 384 F. Supp. 3d 898, 903 (M.D. Tenn. 2019); *Rowe v. Chrysler Corp.*, 520 F. Supp. 15, 16 (E.D. Mich. 1981). To meet this burden, the moving party must demonstrate that the following factors favor transfer: the (1) location of the parties and witnesses; (2) location of documents and the relative ease of access to sources of proof; (3) locus of the operative facts; (4) availability of process to compel attendance of witnesses; (5)

cost of obtaining witnesses; (6) forum's familiarity with the governing law; (7) weight accorded the plaintiff's choice of forum; (8) efficiency of a trial being held in the forum; and (9) interests of justice. *Just Intellectuals, PLLC v. Clorox Co.*, 2010 WL 5129014 at *1–2 (E.D. Mich. 2010); *see also Davenport v. Saginaw Valley State Univ.*, No. 16-11289, 2016 WL 3382197, at *2 (E.D. Mich. June 20, 2016.

### III.

### A. Whether Venue is Proper in the Central District of California

As a threshold question, the Court must determine whether venue would be proper in the transferring district—in this case, the Central District of California.

An action could have been brought in a proposed transferee court when that court has jurisdiction of the action, venue is proper, and the defendant is amenable to process issuing out of the transferee court. *Sky Techs. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000) (citation omitted). Defendant contends that this action could have been brought in the transferee district, the Central District of California, where Plaintiff is located. ECF No. 23 at PageID.596. Defendant argues that the Central District of California would have diversity jurisdiction as Plaintiff is a citizen of Michigan and Defendant is a citizen of California. *Id.* at PageID.602. Defendant also argues that venue is proper because a "substantial part of the events or omissions giving rise to the claim occurred" under 28 U.S.C. § 1391.

While there is a dispute as to where a substantial part of the events or omissions giving rise to the claims occurred, Plaintiff does not address this threshold issue in their briefing. *See generally* ECF No. 28. Thus, this Court assumes that venue would be proper within the Central District of California.

### B. Location of the Parties and Witnesses

Defendant argues that the location of the Parties and witnesses requires a venue transfer. Plaintiff is in Torrance, California, and Defendant's new employer is also a California-based company. ECF No. 23 at PageID.596. Defendant also identifies several witnesses, all of whom are in California. *Id.* at PageID.604–05.

Here, the inconvenience to the Parties or witnesses is minimal if venue is not transferred. Convenience of non-party witnesses is critical in deciding a 28 U.S.C. § 1404(a) transfer-of-venue motion. *Performance Contracting, Inc. v. DynaSteel Corp.*, 2012 WL 1666394 (E.D. Mich. May 9, 2012). The crux of the Defendant's convenience arguments is based on geography alone, contending that these witnesses would be "burdened by having to participate in litigation across the County." ECF No. 23 at PageID.605. But this Court has been able to conduct virtual hearings since the COVID-19 pandemic to accommodate such concerns. *See Standard Ins. Co. v. Lakkaraju*, No. 20-CV-11229, 2020 WL 4435168, at *3 (E.D. Mich. Aug. 3, 2020) (holding that arguments based on inconvenience due to travel are moot because the Court was able to hold virtual hearings); *see also Sonos, Inc. v. Linkplay Tech. Inc.*, No. 1:24-CV-131, 2024 WL 4605870, at *9 (D. Del. Oct. 29, 2024) ("Given the availability of virtual hearings and virtual depositions, [airline travel] is not much of a burden."). Thus, this factor cuts against transfer.

### C. Locus of Operative Facts

Turn to the next factor. Defendant argues that the locus of operative facts favors transfer. Not so.

This factor does not favor transfer in situations where the alleged tortuous conduct occurred within the district in which the case is filed. *Air Sys., Inc. v. Newton*, No. 18-13889, 2019 WL 1281919, at *7 (E.D. Mich. Mar. 19, 2019) ("While it is certainly true that the consequences of Defendant's alleged conduct reached Michigan, the allegedly tortious conduct actually occurred in

Kentucky. Thus, this factor tips slightly in favor of a Kentucky venue."); *Meier v. Schwarz Partners*, No. 22-11644, 2022 WL 16571306, at *3 (E.D. Mich. Nov. 1, 2022) (same). On this front, Defendant argues that any use or disclosure of the alleged tortious conduct would have to happen in California because that is where her clients are. ECF No. 23 at PageID.607.

But a misappropriation of trade secrets claim can be established by the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." MICH. COMP. LAWS § 445.1902(b)(i). Further, downloading confidential files and uploading them to a personal Google Drive to retain files after termination can constitute the acquisition of a trade secret by improper means. *Broad-Ocean Techs., LLC v. Lei*, 649 F. Supp. 3d 584, 595 (E.D. Mich. 2023). As a result, Defendant's alleged misappropriation of trade secrets happened within Michigan. ECF No. 28 at PageID.749. Indeed, this Court's understanding is that Defendant downloaded all trade secrets and documents to her laptop within the State of Michigan, and still currently resides within the state. *Id.* Thus, the locus of operative facts occurred in Michigan, and this factor does not favor transference.

### D. Availability of Process to Compel Attendance of Witnesses

Defendant argues that the witnesses central to the case are in California and are outside of the Court's subpoena powers. ECF No. 23 at PageID.605. This is wrong.

Civil Rule 45 governs subpoenas issued by federal courts. Under this rule, parties may seek court-issued subpoenas that command a person to produce records or attend a trial, hearing, or deposition to testify or produce records. *See* FED. R. CIV. P. 45(a). A subpoena may be served at any place within the United States. *See* FED. R. CIV. P. 45(b)(2). These subpoenas must state where "compliance is required"; that is, where the subpoenaed person must send the records or report for the trial, hearing, or deposition. *See* FED. R. CIV. P. 45(a)(1)(A)(iii), (c). They must also "issue

from the court where the action is pending," FED. R. CIV. P. 45(a)(2). In this way, this Court has the power to issue discovery subpoenas for witnesses in California in this case.

To the extent Defendant asserts that this Court does not have the power to enforce its subpoenas, that is also no issue. True, after receiving a subpoena, a person may move to quash or modify it in "the district [court] where compliance is required," *see* FED. R. CIV. P. 45(d)(3), which in this case may be a California court. But a California court enforcing this subpoena is no problem: As the rules recognize, the court that enforces subpoenas is not always the issuing court. *See* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.) (noting the impact of 2013 amendments to Civil Rule 45). And even so, a party may move to transfer a Civil Rule 45 motion from the enforcing court to the issuing court. FED. R. CIV. P. 45(f). Either way, this Court's subpoenas are enforceable, whether here or in a California court.

### E. Cost of Obtaining Witnesses

Moving on, Defendant does not argue that the cost of obtaining witnesses would be so high as to require a venue transfer. *See generally* ECF No. 23. And because hearings and depositions can be done virtually, the Court does not believe that this factor favors transfer. *See Sonos, Inc.*, No. 1:24-CV-131, 2024 WL 4605870 at *9.

### F. Forum's Familiarity with Governing Law

Defendant argues that California law governs the case, so a California court would be best situated to address California law. This Court disagrees that California law, rather than Michigan law, governs the case, so this factor also does not favor transfer.

Because this case is in federal court based on diversity jurisdiction, this Court must apply Michigan's choice-of-laws rule. *See Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 738 (6th Cir. 1999). Michigan looks to the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 to determine

whether it will enforce a choice-of-law clause. *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 389 (6th Cir. 2017). That Restatement, in relevant part, provides the following:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless . . .
>
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).

Under § 187, this issue is straightforward. Indeed, Defendant Rosen signed a noncompete agreement, which provided that Michigan law would apply to any disputes. ECF No. 5-3 at PageID.86–87. So under § 187(1), Michigan law applies to this case.

Even so, the Sixth Circuit has applied the § 187(2)(b) exceptions even when operating under § 187(1) in its choice-of-law analysis. *Stone Surgical, LLC*, 858 F.3d at 389. Thus, the Court will prudentially address the § 187(2)(b) and determine whether, ignoring the Parties' Michigan choice-of-law provision, California law would have applied under § 188. *See id.* This Court concludes that even absent the Michigan choice-of-law provision, California law does not apply under § 188.

Section 188 states that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." This is determined by considering the following factors: (1) "the place of contracting," (2) "the place of negotiation of the contract," (3)

"the place of performance," (4) "the location of the subject matter of the contract," and (5) "the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)).

First, the place of contracting neither favors Michigan nor California. Defendant signed her agreement in Arizona while en route to Michigan. ECF No. 23 at PageID.611. This factor is neutral. Similarly, the place of negotiation of the contract is also a wash because, while the initial contract was seemingly negotiated in California, the second agreement and its changes were signed in Arizona. *Id.* Thus, any new negotiations would have happened independent of either state.

Second, the place of performance and the subject matter of the contract do not favor either Michigan or California's laws. Not in dispute is whether Defendant performed most of her duties from the state of Michigan—she did. That fact cuts against transfer. What is disputed, however, is whether the subject matter of her duties was entirely based in California. The Sixth Circuit in *Stone Surgical* found that the location of the subject matter favored the state of Louisiana because the noncompete agreement was limited to that state. 858 F.3d at 390. But here the Defendant's noncompete agreement was global, ECF No. 5-3 at PageID.86–87, and her role with the company was national. ECF No. 28 at PageID.752. Yet the location of the subject matter is most likely California because that is where most of Defendant's clients were solicited. Thus, for the analysis of the relationship between performance and the location of the subject matter, the factors effectively offset each other.

Lastly, the domicile of the Defendant and the place of business of the Plaintiff offer no clarity. The Defendant is domiciled in Michigan, and the Plaintiff's place of business is in California. This factor is thus neutral.

Because the factors do not lean one way or another, California does not have a "materially greater interest than the chosen state": Michigan. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (2)(b) (1971). "This analysis is distinct from determining which state's law would have applied absent a choice-of-law clause." *Stone Surgical, LLC*, 858 F.3d at 390. The state of Michigan has an interest in the determination of this matter. Michigan Law strongly favors the enforcement of noncompete agreements. *Id.* at 391 n.5. Further, Michigan law presumes that a person who signs an agreement is aware of its contents. *McKinstry v. Valley Obstetrics-Gynecology Clinic, P.C.*, 428 Mich. 167, 184, 405 N.W.2d 88, 96 (1987). And in Michigan, it is established that "'competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.'" *Terrien v. Zwit*, 467 Mich. 56, 71, 648 N.W.2d 602 (2002) (quoting *Twin City Pipeline Co. v. Harding Glass Co.*, 283 U.S. 353, 357 (1931)). While Defendant may not remember signing the May agreement, Michigan law clearly favors enforcing agreements freely entered into between parties. Because Michigan has an interest in enforcing agreements freely entered into, and because California does not have a materially greater interest in this case, the Parties' Michigan choice-of-laws clause applies.

At bottom, the governing law is Michigan law. And without a transfer, it will be applied by a Michigan court. As a result, the forum's familiarity with the governing law does not favor transfer.

### G. Weight Accorded to the Plaintiff's Choice of Forum

The Plaintiff's choice of forum also undercuts transfer. The plaintiff's choice of venue is rarely disturbed, unless the other transfer of venue factors strongly favor the movant. *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951). To succeed, the Sixth Circuit requires that a plaintiff's chosen forum be "unnecessarily burdensome" for the defendant or a non-party witness.

*Innovation Ventures, Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 568 (6th Cir. 2019). But a strong presumption of choice of forum is not afforded to plaintiffs who do not reside in the chosen forum. *Audi AG v. Shokan Coachworks, Inc.*, 2007 WL 522707, at *5 (E.D. Mich. February 13, 2007). Still, lack of residence in the forum state is no issue when the operative facts of the case occurred within the plaintiff's chosen forum. *Standard Ins. Co. v. Lakkaraju*, No. 20-CV-11229, 2020 WL 4435168, at *3 (E.D. Mich. Aug. 3, 2020).

Here, the operative facts of the case, the misappropriation of trade secrets, occurred within the State of Michigan, not California. Moreover, Defendant has not proved that the chosen forum is unnecessarily burdensome. Again, they argue that witnesses and discoverable information are located in California; however, as stated before, the Court can conduct virtual hearings and subpoena discoverable information. Thus, this factor does not favor transfer.

### H. Efficiency of Trial Held in the Forum

Defendant does not address the efficiency of trial held within the forum. Thus, this factor is neutral.

### I. Interest of Justice

Defendant argues that judicial economy favors transfer. True, the judicial economy is included among the interest of justice factors. *Steelcase, Inc. v. Mar-Mol Co.*, 210 F. Supp. 2d 920, 941 (W.D. Mich. 2002). But judicial economy does not favor transfer when it would require another court to spend considerable time getting up to speed on the case, potentially delaying the final resolution. *Id.* While this case has not been pending for months, as in *Steelcase*, this case has already comprised (1) a Motion for and the granting of a TRO, (2) another pending Motion to then dissolve or modify that TRO, (3) a Motion to Expedite Discovery, and (4) three separate status conferences. Based on this substantial progress, the judicial economy does not favor transfer.

Lastly, Defendant argues that the interest of justice favors transfer because this case is Plaintiff's way of hamstringing Defendant from working and alleges that this is an attempt by the Plaintiff to gain control of California's environmental consultant market through geographic gamesmanship. ECF No. 23 at PageID.619. Maybe so. But at this point, that argument is purely speculation. So this factor does not favor transfer.

In sum, Defendant has not met her burden in establishing that transfer is warranted. Indeed, none of the relevant factors clearly weigh in favor of transferring venue to the Central District of California. Accordingly, Defendant's Motion for Transfer of Venue, ECF No. 23, will be denied, and her Motion to Stay Answer Deadline and Limit Discovery Pending Resolution of the Motion to Transfer Venue, ECF No. 24, will be denied as moot.

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion for Transfer of Venue, ECF No. 23, is **DENIED.**

Further, it is **ORDERED** that Defendant's Motion to Stay Answer Deadline and Limit Discovery Pending Resolution of the Motion to Transfer Venue, ECF No. 24, is **DENIED AS MOOT.**

**This is not a final order and does not close the case.**

Dated: September 18, 2025               s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge